## Title Trust & Guarantee Company Case (No. 2).

Argued October 5, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Philip P. Sharkey* and *Horace M. Barba,* Special Deputy Attorney General, with them *Oliver C. Cohen,* Deputy Attorney General, *Charles J. Margiotti,* Attorney General, and *Charles Hasson,* for appellant.

*J. C. Davies,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

The Title, Trust and Guarantee Company of Johnstown, Pa., had long been insolvent before the events here narrated, and the bank's officers knew this, but its doors were deliberately kept open for business, receiving deposits and handling trust funds. Many things contributed to its insolvency, but one outstanding thing was heavy loans, far in excess of the legal maximum, to officers and directors of the bank and their affiliates, only a small portion of which were collectible. During this period of insolvency, bonding companies withdrew as sureties for municipal funds and were never replaced. The Title Company's officers were substantially the same as the officers of the First National Bank of Johnstown and dominated the affairs of both banks; to conceal the real condition of the banks and to cover a shortage in reserves, improper entries were made in the books of both banks as to transactions between them. There were also serious violations of the duties of the Title Company as a fiduciary; these facts we now narrate.

Appellees are minor children of W. E. Johnson. On the death of their parents they became the beneficiaries

of a life insurance trust set up by their father. The Title Company was named trustee and directed to invest the proceeds of the policies in "securities authorized by the laws of the Commonwealth of Pennsylvania for the investment therein of trust funds." Gartland, executive vice-president, superseded the regular trust officer who ordinarily handled these trusts, and requested the agent of the Fidelity Mutual Life Insurance Company to give him the check for $16,690.15. This check, payable to the Title Company as trustee for the appellees, was received by him. The court below found that, instead of depositing this check in a trust account, the Title Company endorsed it over to its own commercial department where it became *part of the cash funds of the bank;* no exception was taken by appellant to this particular finding of fact. The bank failed, but there were sufficient cash funds remaining up to the time the receiver took possession to meet the claim. The appellees were entitled to a preference if they can prove the trust attached to the funds after their transfer to the bank's commercial department. See *Erie Trust Company's Case (No. 1),* 326 Pa. 198, in which this court held that, where trust funds are improperly mingled with the individual cash of the trustee, the cestui may trace into the lowest balance of the mingled cash.

The commercial department accepted the funds although it was aware of its insolvent condition, which was clearly improper. The bank, if it did not continue to be an express trustee, became a trustee ex maleficio whether the transaction was a deposit for collection *(Cameron v. Carnegie Trust Co.,* 292 Pa. 114; *Lipschutz v. Phila. Sav. Fund Society,* 107 Pa. Super. Ct. 481) or a purchase *(Corn Exchange National Bank v. The Solicitors' Loan & Trust Co.,* 188 Pa. 330) ; *Title Trust & Guarantee Company's Case (No. 1),* 328 Pa. 129. If it could be said the commercial department purchased the check from the trust department, a trust might attach for the additional reason that a trustee may not buy

trust property in his individual capacity from himself as trustee, or more particularly, a trust company cannot sell trust property to its banking department *(Tracey v. Central Tr. Co.,* 327 Pa. 77; Restatement of the Law of Trusts, Section 170, b, d), but this need not here be decided. The check having been mingled with the general funds of the bank which at all times remained ample to satisfy the preferred claims in full, appellees were entitled to a preference for their claim.

Various other matters occurred which could be mentioned, but to recite them only multiplies the misconduct of the bank as they do not bar a preference. A treasurer's check was issued by the commercial department, marked "Trust Funds," and sent without a deposit slip indicating what trusts were involved, to the First National Bank of Johnstown, where the Title Company had both a commercial account and a trust account. No cash transfer followed, however. Instead of being credited to the trust account, the item was credited to the Title Company's commercial account. The circumstances lead to the belief that this was planned for the purpose of bolstering bank reserves rather than through inadvertence. The proper credit was not made in the trust account until just before or sometime after the bank holiday on March 4, 1933. In the meantime, the guardian and attorney for the orphans kept insisting that the money be invested in government bonds. The officers of the bank misled them into believing that they had purchased such bonds. This was not done. The bank holiday on March 4th restricted the trust account in the First National and made investment therefrom impossible, a period of more than six weeks.

The whole transaction was an improper one, but appellees are not controlled by this account in the First National. They may treat the issuance of the treasurer's check as nonexistent in fact, since it was simply a subterfuge to deceive, and may pursue the proceeds of the original trust property in the hands of the receiver.

There is one matter which must be corrected. Although the lower court's conclusions of law were to the effect that a preference should be allowed in the distribution of the funds, the decree reads as though the secretary of banking individually is to be surcharged. Since he is charged in his capacity as receiver and not personally, the order is modified to read that the secretary as receiver is decreed to allow the exceptants, the present appellees, a preference.

Decree affirmed at cost of appellant.