Commonwealth *v.* Landy, Appellant.

Submitted December 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Reggie B. Walton* and *John W. Packel*, Assistant Defenders, and *Benjamin Lerner*, Defender, for appellant.

*Laurence H. Brown, Mark Sendrow*, and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 22, 1976:

Appellant challenges the lower court's denial of his petition for return of money seized at the time of his arrest, filed pursuant to Rule 324, Pennsylvania Rules of Criminal Procedure, on the following grounds: first, that the lower court erred in admitting prejudicial hearsay testimony, and second, that the Commonwealth failed to produce sufficient evidence to demonstrate beyond a reasonable doubt that the money was derived from the illegal sale of narcotics.

The appellant, Joseph Landy, was arrested on August 2, 1973 and charged with possession[1] and possession with intent to deliver[2] a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act. On April 15, 1975, appellant petitioned the court for an order dismissing the charges with prejudice pursuant to Rule 1100(f), Pa.R.Crim.P. Appellant's petition was

---

1. Act of April 14, 1972, P.L. 233, No. 64, §13; as amended Oct. 26, 1972, P.L. 1048, No. 263, §1; December 30, 1974, P.L. 1041, No. 340, §1; 35 P.S. §780-113(a)(16).

2. Act of April 14, 1972, supra; 35 P.S. §780-113(a)(30).

granted on May 15, 1975, and the indictments were dismissed. On May 22, 1975, appellant petitioned the court, pursuant to Rule 324, Pa.R.Crim.P., for return of money confiscated at the time of his arrest.

The following facts were developed at the July 8, 1975 hearing on appellant's petition. Officer Arthur Beckman, the Commonwealth's sole witness, testified that at approximately 10:30 A.M. to 10:45 A.M. on August 2, 1973, he and his partner were conducting a surveillance of the corner of Broad and Snyder Streets, Philadelphia. At that time, he observed one Antone Pescala accept an undetermined sum of money from two individuals. While his partner kept the two individuals under surveillance, Officer Beckman followed Pescala to a nearby street where Pescala gave the appellant the money in exchange for some pills. Appellant put the money in his left pocket, and Pescala subsequently "passed something" to the two individuals. Still following Pescala, Officer Beckman observed him accept a second undetermined sum of money from a different individual. Pescala again took the money to the appellant in order to exchange it for pills. The appellant took the money and began "pouring pills from the plastic vial into Pescala's hand"; Officer Beckman then identified himself, arrested both appellant and Pescala, and confiscated the pills and $552 from appellant's left pocket.

The appellant, the sole witness for the defense, testified that his mother gave him $500 of the $552 to purchase an automobile for her. Appellant also denied participating in the sale of narcotics, and stated that the pills in his possession had been prescribed by a doctor.

The lower court denied appellant's petition at the end of the July 8, 1975 hearing. The lower court specifically found that "the Commonwealth is not held to the same degree of proof as required in a criminal trial," and that "the Commonwealth has sustained its burden of showing that the money formed an integral part of the illegal narcotics activity." This appeal followed.

I

Rule 324, Pa.R.Crim.P., provides as follows:

"(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

"(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

"(c) A motion to suppress evidence under Rule 323 may be joined with a motion under this Rule."

Under Rule 324, the lower court is required to return property to a petitioner entitled to lawful possession unless the lower court determines that the property is "contraband." Rule 324, however, does not define "contraband"; nor is "contraband" a self-defining term. There are two classes of contraband property: (1) contraband *per se*, which is property that has no lawful use in the hands of a particular defendant, and (2) derivative contraband, which is property, in and of itself lawful, but which is deemed contraband because of the way in which it is used by a particular defendant. See *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965); *Commonwealth v. Altizer*, 213 Pa. Superior Ct. 201 (1968). See generally, Comment, *Forfeitures — Civil or Criminal?*, 43 Temp. L.Q. 191 (1970); Note, *Commonwealth v. One 1958 Plymouth Sedan: Search and Seizure in Forfeiture Proceedings for Liquor Law Violations*, 69 Dick. L. Rev. 284 (1965). In order to determine whether property is contraband, therefore, reference must be made to the statute that outlaws the property or the particular use of the property.

In the instant case, the appellant was charged with possession and possession with intent to deliver a controlled substance. Section 780-128[3] of the Act defines what property is "subject to forfeiture to the Commonwealth" as contraband. Among the items listed in §780-128 are all controlled substances,[4] all raw materials used in manufacturing controlled substances,[5] all property used as a container for controlled substances,[6] all vehicles which transport controlled substances,[7] and all books and records pertaining to controlled substances.[8] Section 720-128, however, does not specifically authorize the forfeiture of money received in exchange for the illegal delivery of controlled substances. We do not regard this omission as evidencing a legislative intent to immunize from forfeiture the proceeds of the sale of a controlled substance. Rather, the statutory scheme envisions the confiscation of the proceeds by the imposition of a fine following conviction: §780-113(f)(1)[9] provides that upon conviction of violating §780-113(a)(30) (possession with intent to deliver), the defendant "shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in *and the profits obtained from* the illegal activity." (Emphasis supplied). Any argument that the legislature intended a fine following conviction to be the sole means of depriving a seller of the fruits of his criminal act, however, must be rejected: §780-113(h)[10] provides that "[a]ny penalty imposed for violation of this act shall be in addition to,

---

3. Act of April 14, 1972, P.L. 64; §28; 35 P.S. §780-128.
4. Act of April 14, 1972, supra; 35 P.S. §780-128(a)(1).
5. Act of April 14, 1972, supra; 35 P.S. §780-128(a)(2).
6. Act of April 14, 1972, supra; 35 P.S. §780-128(a)(3).
7. Act of April 14, 1972, supra; 35 P.S. §780-128(a)(4).
8. Act of April 14, 1972, supra; 35 P.S. §780-128(a)(5).
9. Act of April 14, 1972, supra; 35 P.S. §780-113(f)(1).
10. Act of April 14, 1972, supra; 35 P.S. §780-113(h).

and not in lieu of, any civil or administrative penalty or sanction authorized by law."

Money, under certain circumstances, is subject to seizure and forfeiture. See *Commonwealth v. Blythe*, 178 Pa. Superior Ct. 575, 115 A. 2d 906 (1955); *Pannulla v. Rosenberg*, 171 Pa. Superior Ct. 233, 90 A.2d 267 (1952). Surely money proceeds directly derived from and directly traceable to the sale of a controlled substance (contraband *per se*), a criminal act, are "derivative contraband" subject to forfeiture. Such money represents the fruit of the illegal act and it, therefore, takes on the illegal characteristics of the contraband controlled substance. It is not only the policy of The Controlled Substance, Drug, Device and Cosmetic Act, but also the policy of our criminal law to deprive a criminal of the fruits of his illegal act.

## II

Appellant contends that the lower court erred by admitting inadmissible hearsay at the hearing. Specifically, appellant objects to the following exchange between the Commonwealth and the police officer:

"Q. The pills, what were they? ...

"A. As a result of the arrest, the pills were submitted to the Police Chemical Lab on property receipt number 500685. The result of the analysis, which was done by the chemist, was one vial containing eight white tablets which contains active hydro-morphine and reducing sugar. Hydro-morphine is a controlled substance, Schedule Two." Appellant's timely objection was overruled.

"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence §246 (2d ed. 1972). Hearsay has also been defined as "... evidence offered in court by a witness

which is based not on his own knowledge, but on what some other person has stated, and the statement is offered to show the truth of its content." 2 Wharton's Criminal Evidence §265 (13th ed. 1972).

Officer Beckman's testimony concerning the findings of the chemist which were contained in the laboratory report was clearly hearsay. The Commonwealth made no further attempt to properly introduce this evidence. See *Commonwealth v. Crockett*, 229 Pa. Superior Ct. 80, 323 A. 2d 257 (1974) (stipulated doctor's report); *Commonwealth v. Lambert*, 226 Pa. Superior Ct. 41, 313 A. 2d 300 (1973) (the Commonwealth could prove that the drugs were "dangerous drugs" by analysis of the pills, testimony of the treating physician, hospital reports, or identification of the pills by a pharmacologist); *Commonwealth v. Garnett*, 204 Pa. Superior Ct. 113, 203 A. 2d 328 (1964) (testimony of the chemist). Because this testimony was both inadmissible hearsay and the only testimony identifying the pills as a controlled substance, we must remand for a new hearing.

## III

Because we are remanding for further proceedings, it is necessary to address appellant's contention that the Commonwealth must prove beyond a reasonable doubt that the money was derived from the alleged sale of a controlled substance. The lower court held, however, that "[a] petition for the return of confiscated property is an in rem proceeding. Thus, the Commonwealth is not held to the same degree of proof as required in a criminal trial."

Forfeiture proceedings have historical roots dating back thousands of years.[11] At common law, there were

---

11. See generally, Finkelstein, *The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty;* 46 Temp. L.Q. 169 (1973); Comment, *Vehicle*

two forms of forfeiture proceedings. The first involved the forfeiture of a felon's real and personal property. This proceeding was *in personam* in nature and the forfeiture did not attach until the offender was convicted: "The necessary result was, that in every [forfeiture] case where the crown sought to recover such goods and chattels, it was indispensable to establish its right, by producing the record of the judgment of conviction." *The Palmyra*, 25 U.S. (12 Wheat.) 1, 14 (1827).

The second forfeiture proceeding, based on common law deodands, involved the forfeiture of an object causing the death of any creature: "Where a man killeth another with the sword of John at Stile, the sword shall be forfeit as deodand, and yet no default is in the owner." O. Holmes, The Common Law 25 (1881). This concept probably originated in the Mosaic Code: " ' "if an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten." And, among the Athenians, whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic.' " *J.W. Goldsmith, Jr. — Grant Company v. United States*, 254 U.S. 505, 511 (1921). This forfeiture proceeding was *in rem* in nature with the property itself considered the offender: "It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it was conscious instead of inanimate and insentient." *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931).

Because of their strong ties to common law deodand, modern forfeiture statutes traditionally are considered

---

*Forfeiture in Arizona: Burrage and the Extension of the Quasi-Criminal Doctrine*, Law and the Social Order 476 (1972); Comment, *Forfeitures Civil or Criminal?*, 43 Temp. L.Q. 191 (1970); Note, *Commonwealth v. One 1958 Plymouth Sedan: Search and Seizure in Forfeiture Proceedings for Liquor Law Violations*, 69 Dick. L. Rev. 284 (1965); Note, *Forfeiture of Property Used in Illegal Acts*, 38 N.D. Law. 727 (1963).

civil in rem proceedings.[12] In recent years, however, the United States Supreme Court has closely examined the nature of forfeiture proceedings.

In *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965), the Supreme Court held Fourth Amendment protections applicable to forfeiture proceedings. In so doing, the Court rejected the argument that forfeiture proceedings are solely civil in nature. Relying on *Boyd v. United States*, 116 U.S. 616, 633-634 (1886), the Court stated: "We are also clearly of the opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal." *One 1958 Plymouth Sedan v. Pennsylvania*, supra at 697.

In *United States v. United States Coin and Currency*, 401 U.S. 715 (1971), the Supreme Court held the Fifth Amendment applicable to forfeiture proceedings. The Court reiterated that forfeiture proceedings, although civil in form, are criminal in nature: "From the relevant constitutional standpoint there is no difference between a man who 'forfeits' $8,674 because he has used the money in illegal gambling activities and a man who pays a

---

12. "Certainly distaste for the use of forfeiture comes from an acute perception of the fictitious nature of the action. Although the suit proceeds against the automobile as derivative contraband, the owner, in reality, suffers the punishment of having his possessory interest extinguished." Comment, *Vehicle Forfeiture in Arizona: Burrage and the Extension of the Quasi-Criminal Doctrine*, supra at 477-478.

Commenting on the *in rem* posture of the case in *United States v. United States Coin and Currency*, 401 U.S. 715, 720 (1971), the Supreme Court stated: "The forfeiture action in the present case was instituted as an *in rem* proceeding in which the money itself is the formal respondent. More remarkable, the Government's complaint charges the *money* with the commission of an actionable wrong." The Court now recognizes that the owner of the goods, although not the nominal party, is the substantial party to the suit because he stands to lose his property rights. See *One 1958 Plymouth Sedan v. Pennsylvania*, supra at 701 n.11.

'criminal fine' of $8,674 as a result of the same course of conduct. In both instances, money liability is predicated upon a finding of the owner's wrongful conduct...." *United States v. United States Coin and Currency,* supra at 718.

Finally, in *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232 (1972), the Supreme Court rejected the argument that both double jeopardy and collateral estoppel bar forfeiture proceedings instituted subsequent to an acquittal on the underlying criminal charges. The Court held that the applicable forfeiture statute imposed a civil sanction rather than a criminal penalty and thus "... the difference in the burden of proof in criminal [beyond a reasonable doubt] and civil [preponderance of the evidence] cases precludes application of the doctrine of collateral estoppel." *One Lot Emerald Cut Stones and One Ring v. United States,* supra at 235.[13]

In light of both the history of forfeiture actions and recent Supreme Court cases involving forfeiture, we conclude that the forfeiture proceedings under §780-128 of The Controlled Substance, Drug, Device and Cosmetic Act are civil in form, but quasi-criminal in character. The clear object of §780-128 is to impose a penalty only upon those who are significantly involved in criminal enterprises in violation of the Act.[14] See §780-128(a)(1),

---

13. The Court also found collateral estoppel inapplicable because an acquittal on the criminal charge may have involved a finding that the physical act was not done with the requisite intent. Furthermore, the Court concluded that double jeopardy was inapplicable because the forfeiture proceeding was a civil sanction rather than a second criminal proceeding.

14. Of particular significance is §780-128(a)(4)(i) and (4)(ii): "(i) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited ... unless it shall appear that the owner or other person in charge of such conveyance was a consenting party or privy to a violation of this title; (ii) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent."

(2), (3), (4), (5). See also, *United States v. United States Coin and Currency*, supra; *One 1958 Plymouth Sedan v. Pennsylvania*, supra. We do not, on the other hand, classify these proceedings as "criminal proceedings" so as to require the full panoply of rights due a criminal defendant. On issues of evidence, such proceedings should be treated as civil proceedings with the Commonwealth having the burden of proving the material allegations by a preponderance of the evidence only. See *United States v. One 1965 Buick*, 392 F. 2d 672 (6th Cir. 1968), vacated 402 U.S. 397, on remand 397 F.2d 782 (6th Cir. 1968); *Compton v. United States*, 377 F.2d 408 (8th Cir. 1967); *One 1961 Lincoln Continental Sedan v. United States*, 360 F.2d 467 (8th Cir. 1966); *Fell v. Armour*, 355 F.Supp. 1319 (M.D. Tenn. 1972); *State v. One Certain Conveyance, 1971 Honda 350*, 211 N.W. 2d 297 (Iowa 1973). See generally, 28 C.J.S. Drugs and Narcotics Supplement §139 et seq. In this regard, we note that Pennsylvania case law has consistently required the Commonwealth to prove their forfeiture case by a preponderance of the evidence. See e.g., *Nu-Ken Novelty, Inc. v. Heller*, 220 Pa. Superior Ct. 431, 288 A.2d 919 (1972); *Commonwealth v. Beloff*, 166 Pa. Superior Ct. 286, 70 A.2d 689 (1950); *Commonwealth v. One 1927 Graham Truck*, 165 Pa. Superior Ct. 1, 67 A.2d 655 (1949); *Commonwealth v. Three Halves of Old Fashioned Beer*, 162 Pa. Superior Ct. 191, 56 A. 2d 333 (1948); *Commonwealth v. One 1936 Ford Truck, Three Ton*, 136 Pa. Superior Ct. 473, 7 A.2d 532 (1939).[15] Our research

---

15. The comments to Rules 324 and 323 inferentially approve of the preponderance of the evidence standard of proof. Rule 324(c) provides that "[a] motion to suppress evidence under Rule 323 may be joined with a motion under this Rule." The comment to Rule 324 states that "... if the time and effect of a motion brought under the instant Rule would be, in the view of the judge hearing the motion, substantially the same as a motion for suppression of evidence, he may dispose of the motion *in accordance with Rule 323.*" (Emphasis supplied). The comment to Rule 323 states that a preponderance of the

reveals no authority interpreting either *United States v. United States Coin and Currency*, supra, or *One 1958 Plymouth Sedan v. Pennsylvania*, supra, as requiring a different burden of proof.

Order reversed and case remanded for proceedings consistent with this opinion.

SPAETH, J., concurs in the result.

---

evidence standard of proof is to be applied in disposing of suppression motions.